UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

| | | |
|---|---|---|
| JOHN OTERO, | : | **REPORT AND** |
| Petitioner, | : | **RECOMMENDATION TO THE HONORABLE** |
| -against- | : | **JED S. RAKOFF** |
| FREDERICK MENIFEE, Warden, Federal Correctional Institution, Otisville, New York | : | 04 Civ. 8671 (JSR)(FM) |
| | : | |
| Respondent. | | |

------------------------------------------------------------x

**FRANK MAAS**, United States Magistrate Judge.

I.   Introduction

In this habeas corpus proceeding pursuant to 28 U.S.C. § 2241, petitioner John Otero ("Otero") seeks an order directing the respondent to make an immediate determination of his eligibility for placement in a Community Correctional Center ("CCC") in accordance with the pre-December 2002 practices ("Old Policy") of the Bureau of Prisons ("BOP"). For the reasons that follow, the petition should be granted.

II.   Background

   A.   BOP Policies

In December 2002, the Department of Justice Office of Legal Counsel ("OLC") concluded that the Bureau of Prisons had been incorrectly applying 18 U.S.C. § 3624(c). (See Decl. of Peter M. Skinner, Esq., dated Jan. 31, 2005, Ex. A) (Op. of OLC dated Dec. 13, 2002). That statute, enacted in 1984, authorizes the BOP to place federal

inmates in a nonprison setting for a reasonable period of time, "not to exceed six months, of the last 10 per centum" of their sentences. 18 U.S.C. § 3624(c). Shortly after the OLC issued its opinion, the BOP amended its policies to conform to the OLC interpretation of the statute. (Id. Ex. C) (Mem. dated Dec. 30, 2002, from Warden Menifee to Otisville inmates). The policy change ("Interim Policy") adversely affected inmates serving sentences of less than five years, who routinely had been sent to a CCC for as long as six months under the Old Policy, but could now be transferred there for a maximum of ten percent of their prison terms.[1]

The policy change sparked extensive litigation. Of the numerous judges in this District who have considered an inmate's rights to a CCC assignment at the "back end" of a sentence, several have concluded that the Interim Policy is enforceable, but most have granted the petitions and directed that the BOP expeditiously consider the petitioners' eligibility for assignment to a CCC pursuant to the Old Policy, finding either that the Interim Policy is contrary to the controlling statutes, or that it violates the Administrative Procedure Act ("APA") or the Ex Post Facto Clause of the United States Constitution.[2]

---

[1] The policy reinterpretation also changed the rules for inmates serving brief sentences, who frequently were assigned to CCCs for their entire terms of confinement. Pursuant to the OLC interpretation, inmates who had obtained such "front end" CCC assignments were notified that they would be moved to more traditional prison facilities. See United States v. Arthur, 367 F.3d 119, 121 (2d Cir. 2004).

[2] Cases espousing the minority view include Galizia v. Fed. Bureau of Prisons, No. 04 Civ. 5777 (RCC), 2004 WL 1900350, at *3 (S.D.N.Y. Aug. 25, 2004) (noting that Section
(continued...)

²(...continued)
3624(c) is "not the most artfully drafted statute," but rejecting request for preliminary injunction mandating review of petitioner's claim in accordance with Old Policy); Roth v. Menifee, No. 04 Civ. 3552 (TPG), 2004 WL 1886010, at *1 (S.D.N.Y. Aug. 23, 2004) (rejecting APA and ex post facto claims, and holding that "the interpretation of the statute by the Department of Justice [OLC] is precisely in accordance with what the statute states"); Loeffler v. Menifee, 326 F. Supp. 2d 454, 464 (S.D.N.Y. 2004) (Castel, J.) (Section 3621(b) does not control petitioner's placement because a CCC is not a "place of imprisonment;" also, "[b]ecause the law has not changed since the commission of [petitioner's] crime, . . . the reinterpretation of the statute does not violate the ex post facto clause"); Cohn v. Fed. Bureau of Prisons, 302 F. Supp. 2d 267, 272-73 (S.D.N.Y. 2004) (Pauley, J.) (declining to apply Section 3621(b) to "back end" CCC placements because "the Second Circuit has held [in United States v. Thomas, 135 F.3d 873, 875 n.3 (2d Cir. 1998),] that "confinement in a [CCC is] not 'imprisonment'" and because the "more-specific § 3624(c)" limits "§ 3621(b)'s broad grant of general authority;" also rejecting APA and ex post facto claims); and Adler v. Menifee, 293 F. Supp. 2d 363, 367 (S.D.N.Y. 2003) (Brieant, J.) (finding that the Old Policy "intentionally disregarded the plain meaning of § 3624(c)," and that neither the APA nor the Ex Post Facto Clause gave the petitioner a "vested interest in violation of the law no matter how long continued").

Cases reflecting the majority view include Schoenfeld v. Menifee, No. 04 Civ. 3551 (NRB), 2004 WL 1516797, at *2 (S.D.N.Y. July 7, 2004) (invalidating Interim Policy on basis of Cato and Zucker decisions summarized below); Schorr v. Menifee, No. 04 Civ. 1863 (SHS), 2004 WL 1320898, at *6 (S.D.N.Y. June 14, 2004) (finding ex post facto violation and therefore not reaching other issues); Panchernikov v. Fed. Bureau of Prisons, No. 04 Civ. 2531 (RMB), 2004 WL 875633, at *3 (S.D.N.Y. Apr. 23, 2004) (concluding that Section 3624(c) "limits the broad grant of authority . . . in Section 3621(b)," but that the Interim Policy violates the Ex Post Facto Clause because the petitioner pled guilty before the policy changed); Crapanzano v. Menifee, No. 04 Civ. 1052 (SAS), 2004 WL 736860, at *4 (S.D.N.Y. Apr. 5, 2004) (finding Interim Policy consistent with the "plain meaning" of Section 3624(c), but nevertheless violative of the Ex Post Facto Clause where the petitioner was sentenced before the change took effect); Crowley v. Fed. Bureau of Prisons, 312 F. Supp. 2d 453, 463 (S.D.N.Y. 2004) (Hellerstein, J.) (distinguishing Adler and Cohn because the sentencing judge's recommendation that Crowley spend his final eighteen months in a CCC or halfway house was predicated on the Old Policy; also finding violations of APA and Ex Post Facto Clause); Quintero v. Menifee, No. 04 Civ. 1597 (GEL), slip op. at 3 (S.D.N.Y. Apr. 5, 2004) ("It would serve no purpose for this Court to add to the volume of analysis already produced by a number of thoughtful and learned judges on both sides of the debate. Suffice it to say that this Court agrees with Judge Holwell's analysis of the statute in Zucker."); Grimaldi v. Menifee, No. 04 Civ. 1340 (DAB), 2004 WL 912099, at *7 (S.D.N.Y. Apr. 29, 2004) (concluding that the OLC opinion and Interim Policy are based on an "erroneous interpretation of 18 U.S.C. §§ 3621(b) and 3624(c)," but declining to address the APA and ex post facto claims); DiStefano v. Fed. Bureau of Prisons,

(continued...)

3

In response, the BOP has adopted new regulations, effective February 14, 2005 ("New Policy"), which again limit an inmate's eligibility for confinement in a CCC to the last ten percent of the prison sentence, not to exceed six months. (See Resp't's Mem. at 5). The new regulations provide as follows:

> § 570.20  What is the purpose of this subpart?
>
> (a) This subpart provides the Bureau of Prisons' . . . categorical exercise of discretion for designating inmates to community confinement. The Bureau designates inmates to community confinement only as part of pre-release custody and programming which will afford the prisoner a reasonable opportunity to adjust to and prepare for re-entry into the community.
>
> (b) As discussed in this subpart, the term "community confinement" includes Community Corrections Centers (CCC) (also known as "halfway houses") and home confinement.
>
> § 570.21 When will the Bureau designate inmates to community confinement?
>
> (a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months.

---

[2](...continued)
No. 04 Civ. 7 (RWS), 2004 WL 396999, at *5-*6 (S.D.N.Y. Mar. 4, 2004) (adopting reasoning of Zucker); Zucker v. Menifee, No. 03 Civ. 10077 (RJH), 2004 WL 102779, at *10 (S.D.N.Y. Jan. 21, 2004) ("In this court's view, . . . § 3621(b), read in conjunction with § 3624(c), allows the BOP to consider prisoners for CCC placement prior to their six-month/10% date."); Greenfield v. Menifee, No. 03 Civ. 8205 (KMW), 2003 WL 23181269, at *1 (S.D.N.Y. Nov. 20, 2003) (requiring review pursuant to Old Policy for reasons previously stated on the record); Cato v. Menifee, No. 03 Civ. 5795 (DC), 2003 WL 22725524, at *5 (S.D.N.Y. Nov. 20, 2003) (Interim Policy violates Section 3621(b), APA, and Ex Post Facto Clause).

> (b) We may exceed these time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority (for example, residential substance abuse treatment program, . . ., or shock incarceration program.

28 C.F.R. §§ 570.20, 570.21.

Thus, the BOP's current position is "that it does have the discretion [under 18 U.S.C. § 3621(b) ("Section 3621(b)")] to place an inmate in a CCC for all or any portion of the prison sentence, but has chosen to 'exercise its discretion categorically' and to decline to authorize CCC placement for any prisoner prior to the last ten percent of his sentence." Lesnick v. Menifee, No. 05 Civ. 4719 (JCF), 2005 WL 2542908, at *3 (S.D.N.Y. Oct. 11, 2005) (quoting 69 Fed. Reg. at 51,214). The Second Circuit has yet to address the New Policy. In a recent decision however, the Third Circuit has held that the New Policy is invalid because it does not take into consideration the mandatory factors enumerated in Section 3621(b). See Woodall v. Fed. Bureau of Prisons, ___ F.3d ___, 2005 WL 3436626, at *1 (3d Cir. Dec. 15, 2005). That statute states that the BOP has discretion to designate the place of an inmate's imprisonment provided that it considers:

> (1) the resources of the facility contemplated;
> (2) the nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner;
> (4) any statement by the court that imposed the sentence –
>     (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>     (B) recommending a type of penal or correctional facility as appropriate; and
> (5) any pertinent policy statement issued by the Sentencing Commission.

5

18 U.S.C. § 3621(b) (emphasis added). At least two Judges in this District agree that the BOP cannot exercise its discretion categorically as it did in enacting the New Policy. See Lesnick, 2005 WL 2542908 (Judge Francis); Drew v. Menifee, No. 04 Civ. 9944 (HBP), 2005 WL 525449 (S.D.N.Y. Mar. 4, 2005).

B. Otero's Situation

On May 21, 2004, Judge Pauley sentenced Otero to twenty-four months of imprisonment, to be followed by three years of supervised release, on a charge of conspiracy to commit bank fraud to which he previously had pleaded guilty. (See Decl. of Patrick W. Ward, Esq., dated Jan. 24, 2005 ("Ward Decl."), Ex. C). Otero began serving that sentence on September 9, 2004, and his projected release date (provided he earns the maximum good conduct time credit) is June 5, 2006. (Id. Ex. A at 4-5; Resp't's Mem. at 6). He is currently incarcerated at the Federal Prison Camp at Otisville, New York, in this District. (Ward Decl., Ex. D at 1).

Otero filed this pro se habeas corpus proceeding pursuant to 28 U.S.C. § 2241 on October 14, 2004. (Pet. at 1). In his petition, Otero challenges the BOP's Interim Policy. Based on that policy and the New Policy, the earliest date on which Otero will be eligible for transfer to a CCC is April 4, 2006. (Id.). If the Old Policy were in effect, however, Otero presumably would have been eligible for CCC placement on December 5, 2005 (six months before his statutory release date). Thus, the change in policy means that Otero may spend as many as 120 extra days at Otisville before being transferred to a CCC.

Otero seeks an order directing the BOP to decide immediately his eligibility

6

for pre-release placement in a CCC pursuant to the Old Policy. (Pet. at 6). Otero contends that he is entitled to this relief because the Interim Policy: (a) misinterprets the relevant statutes (id. at 4); (b) was implemented in violation of the notice and comment provisions of the APA, 5 U.S.C. § 553 (id. at 3-4); (c) is being applied to him retroactively, in violation of the Ex Post Facto Clause (id. at 3); and (d) conflicts with recent decisions in this District granting petitioners the relief that he seeks (id. at 5).

On December 22, 2005, Otero filed a Motion for Accelerated Judgment in which he asked this Court to consider and follow Lesnick, which held that the New Policy is unenforceable because it fails to require individualized consideration of the factors enumerated in Section 3621(b). (See Docket No. 10). The Respondent has not submitted a response to this application despite having been served more than one month ago.

III. Discussion

The Respondent seeks dismissal of Otero's petition on the ground that he lacks standing to challenge the Interim Policy because it has been superseded and therefore will not be applied to him. (See Resp't's Mem. at 7-9). While it is true that the New Policy has effectively mooted any challenge to the Interim Policy, Otero's Motion for Accelerated Judgment directly addresses the change, which, of course, will lead to the same result. (See Pet'r's Mot. for Accelerated J. at 2). For that reason, I will construe Otero's pro se pleadings as a challenge to the New Policy and consider on the merits whether Otero is entitled to any relief thereunder.[3] See Charboneau v. Menifee, No. 05

---

[3] A petitioner seeking a writ of habeas corpus under Section 2241 must generally
(continued...)

7

Civ. 1900 (MBM), 2005 WL 2385862, at *2 (S.D.N.Y. Sep. 28, 2005) ("Because the Court is obligated to construe a pro se litigant's petition liberally . . . and because petitioner's Traverse makes clear that he also wishes to challenge the application of the [New Policy] to his case . . ., this Court construes [the] petition as a direct challenge to the [New Policy].").

As Your Honor is aware, challenges to the Interim Policy have led to the issuance of numerous written decisions by judges of this Court. See, e.g., Varona v. Menifee, No. 04 Civ. 1790 (JSR), 2004 WL 1161168, at *1 (S.D.N.Y. May 24, 2004) (collecting cases). Unfortunately, the New Policy has the same potential to spawn many opinions reaching essentially the same result. For that reason, I simply will summarize below the reasons (with which I agree) why Judges Francis and Pitman held that petitioners challenging the blanket New Policy were entitled to the relief Otero seeks.

First, Section 3621(b) must be given its plain meaning. See Lesnick, 2005 WL 2542908, at *4-*5. In setting forth the factors to be considered in deciding an inmate's placement, Congress used the word "and" in its list. The use of "and" establishes its intent that the BOP consider all of the statutory factors in exercising its discretion. See id. at *5 ("use of 'and' instead of 'or' underscores Congress' intent"); Drew, 2005 WL 525449, at *4 ("Section 3621(b) sets forth factors that the BOP must

---

[3](...continued)
first exhaust his administrative remedies. United States v. Arthur, 367 F.3d 119, 123 n.1 (2d Cir. 2004). That requirement is excused, however, when the effort would be futile. The exception applies here because the Respondent clearly would have adhered to the New Policy even if Otero had filed an administrative appeal. See, e.g., Loeffler, 326 F. Supp. 2d at 457 (respondent's express decision not to rely on petitioner's failure to exhaust a claim arising out of the Interim Policy is "tantamount to a concession that exhaustion would have been futile").

consider.") (emphasis in original).

Second, the Report of the Senate Committee on the Judiciary regarding Section 3621 confirms that Congress meant what it said. See Lesnick, 2005 WL 2542908, at *6; Drew, 2005 WL 525449, at *4. In that report, the Committee noted that, "in determining the availability or suitability of the facility selected, the [BOP] is specifically required to consider" the enumerated factors, and that "[a]fter considering these factors, the [BOP] may designate the place of imprisonment." Lesnick, 2005 WL 2542908, at *6; Drew, 2005 WL 525449, at *4 (both quoting S. Rep. No. 98-225, reprinted in 1984 U.S.C.C.A.N. 3182, 3324-25) (emphasis in original). Under the New Policy, the BOP clearly does not consider any factors which are specific to the offense or offender or the sentencing court's recommendation. This contravenes the clear statutory scheme. As the Third Circuit has stated, "[t]he Congressional intent here is clear: determinations regarding the placement scheme – including where a prisoner is held, and when transfer is appropriate – must take into consideration individualized circumstances." Woodall, ___ F.3d ___, 2005 WL 3436626, at *12.

Third, while no one disputes that the BOP can exercise its discretion categorically through rulemaking, see Lopez v. Davis, 531 U.S. 230, 243-44 (2001), it still must comply with the statute. As Judge Pitman explained:

> [T]here is no inconsistency between recognizing the BOP's right to exercise its discretion on a categorical basis and requiring that it consider the factors Congress has specifically identified as relevant. For example, if the BOP were to find that all prisoners convicted of a particular offense, or all prisoners with a specified number of convictions, presented a grave and ongoing danger to society, the BOP could conclude that that danger necessarily outweighed the other factors in Section 3621(b) and precluded such prisoners' designation to a CCC until some short, fixed increment before the expiration of their sentence. Such a hypothetical rule would consider the nature and circumstance of the offense or the history and characteristics of the offender, as required by Section 3621(b)(2) and (3), and, under certain circumstances, constitute a categorical finding that either the nature of the offense or the history of the offender outweighed the other statutory factors. Such a rule would constitute a permissible categorical exercise of discretion because it was based on the factors identified in Section 3621(b). The [New Policy], however, simply ignores the Section 3621(b) factors.

Drew, 2005 WL 525449, at *5; accord Lesnick, 2005 WL 2542908, at *10.

Finally, as Judge Francis noted, other judges in this District have upheld the New Policy because the BOP claims to have considered all of the Section 3621(b) factors in promulgating its rule. See Lesnick, 2005 WL 2542908, at *7 (citing cases). However, even if the BOP decided, as it has in the past alleged, that factors one and five should be determinative, its blanket decision plainly does not amount to the individualized determination of each of the factors that the statute requires.

V. Conclusion

For the foregoing reasons, the relief requested by Otero should be granted and the Respondent ordered to consider promptly, in good faith, the appropriateness of transferring Otero to a CCC in light of the factors enumerated in 18 U.S.C. § 3621(b) and

transferring Otero to a CCC in light of the factors enumerated in 18 U.S.C. § 3621(b) and in accordance with the Old Policy.

VI.     Notice of Procedure for Filing of Objections to this Report and Recommendation

The parties are hereby directed that if they have objections to this Report and Recommendation, they must, within ten days from today, make them in writing, file them with the Clerk of the Court, and send copies to the chambers of the Honorable Jed S. Rakoff and to the chambers of the undersigned, at the United States Courthouse, 500 Pearl Street, New York, NY 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Rakoff. The failure to file timely objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b).

Dated:   New York, New York
         January 23, 2006

_____
FRANK MAAS
United States Magistrate Judge

Copies to:

Hon. Jed S. Rakoff
United States District Judge

John Otero [Pro Se]
# 54939-054
Otisville Correctional Institution
Satellite Camp
P.O. Box 1000
Otisville, New York 10963

Peter M. Skinner, Esq.
Assistant United States Attorney
New York, New York 10007
Fax: (212) 637-2730